IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 09-02688-TUC-FRZ (GEE) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| FRANCISCO RIOS; RAUL ORIGEL, JR, | |
| Defendants. | |

The District Court referred this case to the magistrate for hearing on pretrial matters. Hearing on Defendants' Motion to Suppress was held. Upon consideration of the evidence presented and the arguments of respective counsel, the Magistrate recommends the District Court, after its de novo review, deny the Motion to Suppress.

**CHARGES:**

The defendants are charged with conspiring to possess, and with possessing with intent to distribute, approximately 126.75 kilograms of marijuana**.**

**FACTS AND PROCEDURAL BACKGROUND:**

In November, 2009, Santa Cruz County Metro Task Agent Nicholas Acevedo and others were investigating a suspected drug stash house in Rio Rico. On November 3, 2009, Acevedo observed a 1981 Ford pickup truck arrive at the stash house towing a trailer. The

next morning, the pickup and trailer left the suspected stash house. At some point Acevedo contacted Santa Cruz County Sheriff's Deputy Alex Gonzales and instructed him to develop probable cause in order to effect a stop of the pickup. Gonzales conducted a traffic stop of the pickup based on his observations and belief that the trailer's license plate was not legible and the pickup did not have mud flaps as required by Arizona law. Gonzales made contact with the occupants of the pickup. Defendant Origel had outstanding arrest warrants and was taken into custody. Gonzales summoned a narcotics detection K-9 unit which alerted to the presence of narcotics in the trailer. Several bales of marijuana were found concealed in the trailer.

The defendants were arrested on November 4, 2009, and indicted on December 2, 2009. On February 18, 2010, counsel for Origel filed various pretrial motions, including a motion to suppress. Thereafter, counsel for Rios joined in all those motions. It should be noted that counsel for a third defendant has never filed a written joinder in any of those motions and never appeared at hearings on those motions.

**MOTION TO SUPPRESS:**

Defendants argue for the suppression of all evidence on the grounds that the agent lacked reasonable suspicion to stop their vehicle.

*Testimony of Deputy Alejandro Gonzales*

Gonzales is a deputy with the Santa Cruz County Sheriff's Office. On November 4, 2009, he was working the "graveyard shift" when, at about 5:30 a.m., he responded to a radio call for assistance from Santa Cruz County Metro Task Force agent Nick Acevedo who asked that a sheriff's deputy respond to the area of Ruby Road and pull over a vehicle Acevedo suspected was loaded with narcotics. Gonzales encountered the suspect truck and trailer on the overpass of Exit 12 in Rio Rico and followed as the vehicle proceeded northbound on I-19. The suspect vehicle was a brown, older model, Ford truck hauling a trailer loaded with cinder blocks. Acevedo had asked that the Ford be stopped after it had passed Exit 17. Gonzales testified that before he conducted a traffic stop of the Ford he had identified two

- 2 -

1  infractions while he was following the vehicle: (1) the vehicle did not have mud flaps as
2  required by state statute and (2) the license plate on the trailer was not clearly visible.
3       Gonzales testified that Arizona state law requires that any time the height of a pickup
4  truck is altered resulting in the an alteration in the bumper height mud flaps must be affixed.
5  Gonzales stated he concluded the truck's bumper height had been raised because he observed
6  the presence of "aftermarket" tires, i.e., the tires on the Ford appeared "oversized" as
7  compared to those you would usually see on such a truck. These larger tires would alter the
8  vehicle's height, "giving it a lift." With regard to the second infraction, Gonzales identified
9  Exhibit A-5 (attached hereto) as a photograph of the Ford as it appeared on November 4th.
10 He stated that the license is affixed to the left-hand side (i.e., on the driver's side) rear fender
11 of the trailer and is bent over that fender. Gonzales testified the license plate was not clearly
12 visible because he could not see the first digit/letter of the license plate from his point of view
13 before initiating the traffic stop.
14      Gonzales stated he initiated the stop near kilometer 20 on I-19 near Rio Rico; he
15 activated his emergency lights and the truck pulled over. Gonzales exited his vehicle,
16 approached the Ford on the passenger's side, advised the driver that he was being stopped
17 because of the "unreadable" license plate and the absence of mud flaps, and asked the three
18 subjects in the vehicle for identification. The middle passenger, Raul Origel, did not have
19 identification. Gonzales returned to his vehicle and requested "a wants and warrants and
20 license plate check from the communications division." Having received a response,
21 Gonzales returned to the Ford truck, removed Origel from the truck, arrested him, placed him
22 in handcuffs, and placed him in the rear of his patrol vehicle.
23      Gonzales returned to the Ford, advised he was going to verbally cite the driver for the
24 infractions, and asked for consent to search the vehicle. Having obtained consent for the
25 search, Gonzales asked both passengers to exit the Ford, and requested the assistance of a K-9
26 unit. Once the dog handler arrived the dog was deployed around the truck/trailer and its
27 cargo. Gonzales testified he was advised by the handler that the dog had alerted to the cargo
28 and during a search bundles of marijuana were found within the cinder blocks.

On cross-examination, Gonzales testified that on the date in question he was driving a marked sedan–a 2004 Ford Crown Victoria–which he typically drives. He stated agent Acevedo himself requested over the radio for someone to locate the suspect vehicle and develop "PC" to make a stop. Gonzales stated he located the suspect vehicle at about 5:30 a.m. and began following it at about kilometer 12 or 13 on the Interstate. Gonzales testified he understood he was "to develop a pretext for the stop." He explained that when another officer asks that probable cause be developed to make a pretext stop of a vehicle it means that you are to find some violation to justify a vehicle stop. Gonzales stated he followed the truck in the "slow lane" at about a car length's distance. He stopped the vehicle at about kilometer 17. Gonzales stated not every truck is required to have mud flaps pursuant to state law. He admitted he never issued any traffic citations to the driver of the truck. Gonzales stated that soon after stopping the truck he called "dispatch" to determine the estimated arrival time for a K-9 unit.

On cross-examination Gonzales admitted that while he was in the Marine Corps, he was court-martialed in 2002 for falsifying a statement to a police officer. The statement was not made under oath, but was made "to cover for somebody else."

*Testimony of Nicolas Acevedo*

Acevedo is employed by the Nogales Police Department and was working with the Santa Cruz County Metro Task Force on November 4, 2009. At the time in question, Acevedo testified he was in contact, via a cell phone, with another Task Force agent who was following the Ford truck and trailer and provided Acevedo with the truck's description and location. Acevedo testified that Cota's description of the truck and trailer did not include a license plate number. Acevedo relayed the description first to his dispatch and then to Deputy Gonzales who was in the vicinity. Acevedo requested that Gonzales develop probable cause for a traffic stop of the truck which was believed to be loaded with narcotics.

**DISCUSSION:**

Testimony clearly establishes Gonzales conducted a pretextual stop of the Ford pickup on

November 4, 2009. A pretextual stop occurs when the police lack the reasonable suspicion necessary to support a stop, but use a minor violation to support a stop in order to search a person or place for evidence of an unrelated serious crime. Pretextual traffic stops are no longer unconstitutional, so long as the stop for the underlying offense is valid. *Whren v. United States,* 519 U.S. 408 (1997).

Defense counsel argued that Gonzales made mistakes of law and of fact when he determined he had probable cause to stop the truck/trailer.

Gonzales listed two traffic violations he observed before pulling the truck over. The first was a lack of mud flaps on the truck. The relevant statute, A.R.S. §28-958.01, provides:

> **A.** A person shall not operate a truck, trailer...on a highway unless the vehicle is equipped with rear fender splash guards.....
>
> **C.** This section does not apply to:
>
> 1. A vehicle commonly known as a pickup truck with a manufacturer's rating of three-quarter ton or less, *except that this section applies if the pickup truck has been modified from the original bumper height design to raise the center of gravity of the pickup truck.*

(Emphasis added.)

Gonzales testified that he had concluded the truck's "center of gravity" had been altered, i.e., raised or "lifted", because there were "oversized" tires on the truck which his experience led him to believe they were not part of its original equipment. He admitted he had not measured the truck's "center of gravity" and had no direct knowledge regarding the tires originally sold with the truck. No evidence was presented to controvert Gonzales's conclusion that the truck's "center of gravity" had been modified ; and the photos of the truck (attached hereto) support the conclusion that truck appeared lifted or raised.

The second violation that contributed to Gonzales's decision to stop the truck was that the license plate on the trailer being hauled by the truck was not clearly visible as he was following the truck/trailer. A.R.S. §28-2354 deals with the display and attachment of license plates:

> **A.** A person shall display the license plate or plates as follows:

1. For a motor vehicle, motorcycle, trailer or semitrailer. On the rear.....

**B.** ...*A person shall maintain each license so it is clearly legible....*

(Emphasis added.)

Gonzales testified that he was unable to see the full license plate on the trailer until after he stopped the vehicle–specifically, he could not see the first letter, which turned out to be a "W". Exhibit A-5 (attached hereto) shows that the license plate was bent over a rear fender on the driver's side of the trailer with the first letter bent toward the truck and away from any vehicle that might be following behind. Given the fact that Gonzales was following in a sedan–not a SUV– his testimony is credible and was not controverted. Defense counsel argued that the license plate was "clearly visible"; however, the fact that the plate was visible, does necessarily establish that it was "clearly legible." This court concludes that the statutory language indicating that the license plate must be "clearly legible" means that all the letters and/or digits must be able to be read by any person(s) coming into contact with the trailer who might want to identify it.

"[W]here the officer's conduct is objectively reasonable,"that is,"the officer [acted] as a reasonable officer would and should act in similar circumstances," a good faith exception applies. *United States v. Leon,* 468 U.S. 897, 919-20 (1984). However, an officer's erroneous understanding of the law as a basis for a stop is not excused based on the good faith exception. *United States v. Lopez-Soto,* 205 F.3d 1101, 1106 ((9th Cir. 2000). In the present case, defense counsel presented no evidence or authority to establish that Gonzales was mistaken in his understanding of either of the state statutes he relied upon. On the other hand, "a mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot." *United States v. Mariscal,* 285 F.3d 1127, 1131 (9th Cir. 2002).

**RECOMMENDATION:**

In view of the foregoing, the magistrate finds that Gonzales had probable cause to stop

1 the truck/trailer in question, and recommends that the District Court, after its independent
2 review of the record, **DENY** the Motion to Suppress. Either party may file objections within
3 14 days after being served with a copy of this Report and Recommendation. If objections are
4 timely filed, the party's right to de novo review may be waived. If objections are filed, the
5 parties should direct them to the District Court **by omitting the magistrate's initials from**
6 **the caption.**

7 This Report and Recommendation is being faxed to all counsel on today's date. The
8 Clerk of the Court is directed to send a copy of this Report and Recommendation to all
9 counsel.

10 DATED this 2nd day of September, 2010.

*/s/ Glenda E. Edmonds*
Glenda E. Edmonds
United States Magistrate Judge